**SPRINTCOM, INC., Plaintiff**

v.

**PUERTO RICO REGULATIONS AND PERMITS ADMINISTRATION, et al., Defendants.**

**Civil No. 07–1026 (JP).**

United States District Court, D. Puerto Rico.

Feb. 8, 2008.

Miguel J. Rodríguez–Marxuach, Esq., Rodríguez–Marxuach & Gierbolini, P.S.C., San Juan, PR, for Plaintiff.

José Enrico Valenzuela–Alvarado, Esq., José J. Gueits–Ortiz, Esq., Department of Justice of Puerto Rico, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

JAIME PIERAS, JR., Senior District Judge.

The Court has before it Defendant Puerto Rico Regulations and Permits Administration of the Commonwealth of Puerto Rico's ("Defendant" or "ARPE") motion for summary judgment (Nos. 47, 48) and Plaintiff SPRINTCOM, Inc.'s ("Plaintiff" or "Sprint") motion for judgment (No. 49). Also before the Court are the parties' respective responses thereto (Nos. 55, 54). For the reasons stated herein, the Court grants Plaintiff Sprint's motion for judgment (No. 49).

Plaintiff Sprint brought the instant suit against Defendant ARPE for its decision to deny Sprint's application for a preliminary plan approval to install a telecommunications facility on the roof of a three-story building located in the town of Isabela, Puerto Rico. Plaintiff alleges that the telecommunications facility is necessary to provide seamless, reliable wireless telephone and other communication services to individuals living, working or traveling in and around Isabela. In its motion for judgment, Plaintiff argues that Defendant's denial of the application is a violation of the Federal Telecommunications Act ("TCA"), 47 U.S.C. Section 332(c)(7)(B)(i)(II), because the denial was based on the citizens' concerns about alleged adverse environmental and health effects of radio frequency emissions. Sprint also argues that Defendant ARPE has violated Section 2151 of the Puerto

Rico Uniform Administrative Procedure Act ("LPAU") which grants all parties in an administrative case "the right to have the decision based on the record of the case." P.R. LAWS ANN. tit. 3, § 2151 et seq. Sprint requests injunctive and declaratory relief ordering Defendant to grant the application and issue all necessary permits to allow the installation and operation of the facility.

In their motion for summary judgment, Defendant ARPE argues that ARPE's decision to deny Plaintiff Sprint's application was based on substantial evidence contained in the administrative record, and therefore is in compliance with relevant federal and state law.

## I. *PROCEDURAL HISTORY*

An Initial Scheduling Conference was held before the Court on August 15, 2007, wherein the parties agreed that, rather than proceeding to trial, the instant dispute would be decided through dispositive motions. This position was reiterated by all parties hereto in the Further Scheduling Conference held before the Court on November 9, 2007.

On September 11, 2007, Plaintiff asked for the voluntary dismissal of Counts II and III of the complaint, which respectively claimed effective prohibition of service and unreasonable discrimination. The motion was granted on September 21, 2007 (No. 42). Presently, the only issues before the Court are whether ARPE's decision to deny Sprint's application was based on substantial evidence emanating from the administrative record, and whether the decision was based on the record of the case as required by the LPAU.

On December 7, 2007, the parties filed respective motions for summary judgment, which are the subject of this Opinion.

## II. *MATERIAL FACTS NOT IN GENUINE DISPUTE*

The following uncontested facts were included in the parties' cross-motions for summary judgment, and were either agreed upon, or were properly supported and not sufficiently opposed:

A. Sprint executed a lease agreement with Eric Antonio Velasco–Alvarez, owner of the building where a telecommunications facility (the "Facility") is to be installed, on October 13, 2005.

B. In late 2005 or early 2006, Sprint submitted an application for preliminary plan approval (the "Preliminary Plan") to ARPE.

C. As part of its application, Sprint argued that the Facility complied with both Law 89 of June 6, 2000, P.R. LAWS ANN. tit. 27, Section 321 et seq., known as the Puerto Rico Construction, Installation and Location of the Telecommunications Towers Act ("Law 89"), and the Planning Board's (the "Board") Regulation for Telecommunications Projects ("Regulation 26").

D. Also in support of its application, Sprint argued that if ARPE were to determine that a variance was required because the Facility would be installed in a building of less than five stories, Sprint had complied with all the requirements for the granting of such variance pursuant to Regulation 26.

E. Sprint obtained an endorsement from the Puerto Rico Telecommunications Regulatory Board which was issued on June 28, 2006.

F. Sprint obtained a sworn statement, executed by Sakol Ortiz, supervisor of Sprint's Radio–Frequency Engineering Department, stating that

Sprint had researched several locations before determining where to build the Facility. The resolution further stated that Sprint met all the requirements pleaded.

G. On September 11, 2006, some residents sent a letter to the Administrator of the Permits and Regulations Administration, Engineer Luis A. Vélez–Roche, stating their opposition to the installation of the antenna in the building in Isabela. They stated that the installation of the antenna could provoke health and environmental hazards in the area.

H. On the week of October 4, 2006, the notices for the public hearing (the "Hearing") to be held in Isabela on October 24, 2006, were published in "Primera Hora" and "El Norte."

I. After several continuances, and having duly notified the neighbors as required by Regulation 26 and Law 89, the Hearing to consider Sprint's request for approval of the Preliminary Plan was held on October 24, 2006 in the Justo Méndez Cabrera Amphitheater in Isabela.

J. Thirty-two people attended the Hearing.

K. During the Hearing, Sprint argued through the testimony of Engineer José Santiago–Veray that the Facility complied with all applicable requirements of Law 89 and Regulation 26, and that, in the event that the Administration determined that a variance was required, Sprint had complied with all the requirements for a variance included in Section 3.04 of Regulation 26.

L. Residents of the area opposed the installation of the antenna, basing their allegations on possible health risks, including allegations that the antennas would interfere with the functioning of pace makers, would attract lightning, and would cause skin conditions.

M. In that same Hearing, the Mayor of the Municipality of Isabela, Carlos O. Delgado–Altieri, delivered an address stating the reasons why he opposed the installation and construction of the antenna. He stated that there is a proliferation of antennas in densely populated areas, and that allowing the installation of this antenna would hinder the progress that the Municipality has been experiencing for the past four years and would advance the economic interests of a single company.

N. On November 28, 2006, Sprint submitted a sworn statement by Engineer Reinaldo Cordero–Alcaraz, a radio-frequency engineer for Sprint, attesting that the Facility would comply with all applicable Federal Communications Commission ("FCC") requirements, and a memorandum of law in support of Sprint's request for the approval of the Preliminary Plan.

O. On December 4, 2006, ARPE issued a resolution and order (the "Resolution and Order") denying the variance requested because Sprint failed to show extraordinary circumstances demonstrating such variance was merited.

P. In its Resolution and Order, ARPE stated that Sprint had complied with all the procedural requirements for a variance under Regulation 26. To this effect, the Resolution and Order states that "the proponent complied with all the procedural requisites established for the request of a variance." Resolution and Order 8.

Q. ARPE denied the request for Preliminary Plan approval stating that "in the balance of interests to be weighed, we believe that it is more important to address the concerns of the citizens than the economic benefits of the proponent." Resolution and Order 8.

## III. *SUBSTANTIAL EVIDENCE STANDARD*

■ By its Order dated September 20, 2007, the Court held in the instant litigation that "the judicial review of ARPE's decision will be limited to the administrative record of the case" (No. 42). The TCA does not expressly describe the type of procedure that should take place before federal district courts pursuant to 47 U.S.C. Section 332(c)(7), but its requirement that the administrative decision be based on "substantial evidence" clearly points to the fact that, for all intents and purposes, such procedure should take the form of a judicial review of an administrative decision. The United States House of Representative conference report regarding Section 332(c)(7) states that "[t]he phrase 'substantial evidence' contained in a written record is the traditional standard used for judicial review of agency actions." H.R. Conf. Rep. No. 104–458 at 208 (1996), U.S.Code Cong. & Admin.News 1996, 10, 101. *See also City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 128, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005) (citing to the above-cited conference report regarding Section 332(c)(7)). The United States Court of Appeals for the First Circuit has likewise held that "the 'substantial evidence' standard of review is the same as that traditionally applicable to a review of an administrative agency's findings of fact." *Southwestern Bell Mobile Systems, Inc. v. Todd,* 244 F.3d 51, 58 (1st Cir.2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

The TCA provides that any decision by a State or local government "to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In light of the above, as to Plaintiff's Count I of the Complaint alleging violations of the TCA by Defendant, the Court will apply the traditional standard used for judicial review of agency actions, and will determine whether ARPE's Resolution and Order is based on substantial evidence in the written record.

## IV. *SUMMARY JUDGMENT STANDARD*

As to Count IV of the Complaint, in which Plaintiff Sprint argues that Defendant is in violation of the LPAU, the Court will apply the standard generally used to adjudicate motions for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. & Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is

sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *Id.; see also Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505.

## V. ANALYSIS

The Court must determine whether Defendant ARPE's decision to deny Plaintiff Sprint's Preliminary Plan was properly based on the administrative record. The Court must then determine whether Plaintiff Sprint met the standards required for a variance since Sprint sought to construct its tower on a building only three stories high rather than the requisite five. Finally, the Court will evaluate whether summary judgment is appropriate as to Plaintiff Sprint's claims under LPAU.

## A. THE TCA AND APRE'S DENIAL OF THE PRELIMINARY PLAN

■ Plaintiff Sprint argues that the only factor considered by APRE in denying Sprint's Preliminary Plan was the concerns of the site neighbors regarding radio-frequency emissions. Section 704 of the TCA addresses limitations on State and local governments:

> (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commissions's regulations concerning such emissions.

47 U.S.C. § 332(a)(7). Federal courts have repeatedly indicated that, so long as the facilities comply with the FCC's regulations concerning emissions, citizens' health concerns cannot constitute substantial evidence when evaluating a project such as this one. *See New Par v. City of Saginaw,* 301 F.3d 390, 398 (6th Cir.2002) (holding "the [Telecommunications] Act explicitly prohibits local board decision-making on the basis of the environmental effects of radio frequency emissions" (internal quotations omitted)); *Telespectrum, Inc. v. PSC,* 227 F.3d 414, 424 (6th Cir. 2000) (stating "concerns of health risks due to the emissions may not constitute substantial evidence in support of denial by statutory rule").

Sprint argues that APRE, in issuing its Resolution and Order, took into consideration neighbors' concerns regarding the health effects of the radio-frequency emissions, and such consideration was in violation of the above Section. Sprint points out that, in the Resolution and Order, APRE states as follows: "in the balance of interests to be weighed, we believe that it is more important to address the concerns

of the citizens than the economic benefits of the proponent" (Resolution and Order 8). In its motion for summary judgment, Defendant APRE openly admits that in opposition to the application, it took into consideration the presence and testimony of the neighbors who live near the building where the proposed wireless facility was going to be constructed. These neighbors participated in a massive opposition whereby thirty-one of the thirty-two individuals who attended the Public Hearing were in opposition to Sprint's application. However ARPE argues that it also took into consideration many additional factors, including the testimony of Engineer José Santiago and the testimony of the Mayor of Isabela, Carlos O. Delgado–Altieri, both of whom spoke at the Hearing. Specifically, Defendant ARPE alleges that Mayor Delgado–Altieri asserted that there was a proliferation of antennas in densely populated areas, and that allowing the installation of this antenna would hinder the progress that the Municipality had been experiencing for the past four years. He also stated that it would advance the economic interests of a single company.

 After conducting a thorough examination of the Resolution and Order, the Court finds that the only substantial evidence on the written record is that of the site neighbors' concerns related to the effects of radio-frequency emissions. The written record lacks substantial evidence in support of any other reason for the denial of the Preliminary Plan and variance. The testimonies of Engineer Santiago and Mayor Delgado–Altieri are not sufficiently discussed or developed in the Resolution and Order to assume that ARPE relied upon them in denying Sprint's Preliminary Plan. Although ARPE mentions their testimonies in the "Findings of Fact" section of the Resolution and Order, ARPE never explains how the testimonies informed or much less influenced its decision to deny approval of the Preliminary Plan. APRE now argues that residents of Isabela and Mayor Delgado–Altieri fiercely opposed the installation of the Facility based on alleged negative economic and aesthetic impacts resulting therefrom. However, these concerns are not discussed in the Resolution and Order, and are not otherwise a part of the written record. A board's denial "must contain a sufficient explanation of the reasons for the denial 'to allow a reviewing court to evaluate the evidence in the record supporting those reasons.'" *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals,* 297 F.3d 14, 21 (1st Cir.2002) (citing *S.W. Bell Mobile Sys. v. Todd,* 244 F.3d 51, 59–60 (1st Cir. 2001)). Further, APRE may not "provide [Sprint] with one reason for a denial and then, in court, seek to uphold its decision on different grounds." *Nat'l Tower, LLC,* 297 F.3d at 21; *Cellular Phone Taskforce v. FCC,* 205 F.3d 82, 88 (2nd Cir.2000) (interpreting the TCA to preempt state and local governments from regulating construction of personal wireless service facilities on the basis of the health effects of radiation); *Omnipoint Corp. v. Zoning Hearing Bd.,* 181 F.3d 403, 407 (3rd Cir. 1999) (holding that the TCA prohibits local authorities from making "decisions based on concerns over the environmental or health effects of the radio emissions associated with wireless telephone service").

A denial based on environmental effects is improper so long as the applicant has complied with all FCC regulations concerning emissions. 47 U.S.C. § 332(a)(7). Defendant ARPE does not contend that Sprint has failed to comply with regulations regarding emissions, and Engineer Reinaldo Cordero–Alcaraz submitted a sworn statement testifying that Sprint did indeed comply with all regulations. Thus, the Court holds that ARPE improperly based its decision to deny Plaintiff Sprint's

Preliminary Plan on site neighbors' concerns related to the effects of radio-frequency emissions in violation of the TCA.

## B. SPRINT'S COMPLIANCE WITH REQUIREMENTS FOR A VARIANCE

■ Defendant ARPE further argues that Plaintiff Sprint's Preliminary Plan was properly denied because it did not fulfill all the requirements needed to obtain a variance as set forth in Law 89 and Regulation 26. Regulation 26 establishes the rules and procedures for obtaining permits for installation of telecommunication towers and facilities. Law 89 was enacted to harmonize the orderly development of telecommunications facilities in Puerto Rico. Relevant to the instant case, Law 89 provides that "[t]he Planning Board shall take the pertinent regulatory measures to allow ... the installation of transmission stations for radio frequency 'antennas' in multi-story buildings of five (5) or more levels." [1] P.R. LAWS ANN. tit. 27, § 323(c). The building identified by Sprint for its Facility is only three stories high. Thus, Defendant ARPE argues that it denied Sprint's variance because Sprint failed to show extraordinary circumstances meriting the variance. Sprint argues that it presented evidence at the Hearing showing that the Facility complied with Law 89 and Regulation 26. Specifically, Sprint showed that the requirements needed for a variance as set forth in Section 3.04 of Regulation 26 were met. Sprint alleges that ARPE did not present evidence to the contrary at the Hearing.

ARPE concedes that Sprint complied with the procedural requisites for the variance, but argues that it did not show "extraordinariness" and "meritoriousness," and thus was not deserving of a variance. In the "Conclusions of Law" section of the Resolution and Order, APRE set forth the following conclusion:

> Even though, as evident at the public hearing, the proponent complied with the procedural requisites established for the request of a variance, we understand that the same should not be authorized since the factor of extraordinariness and meritoriousness are not present in the case at issue herein.

Resolution and Order 9. Sprint argues that the law does not require a showing of "extraordinariness" or "meritoriousness." Thus, having complied with the procedural requisites, Sprint argues it should receive a variance.

Regarding variances, Law 89 only sets forth that the party seeking a variance must "present an endorsement before the Telecommunications Regulatory Board of Puerto Rico that includes the factors that merit said endorsement." P.R. LAWS ANN. tit. 27, § 323(d). Sprint fulfilled this requirement and submitted in support of its Preliminary Plan an endorsement from the Telecommunications Regulatory Board of Puerto Rico dated June 28, 2006. Section 3.04 of Regulation 26 further requires a party requesting a variance to submit the following to the board: (1) an application form executed by the property owner or his authorized agent; (2) an explanatory memorandum describing whether the telecommunications facility complies with one or more of the requirements of Regulation 26; (3) a report describing other sites considered and the reason the site requested is the best for the facility; and (4) an endorsement from the Telecommunications Regulatory Board. Also, pursuant to Section 3.04, there must be a hearing to discuss the project, and if the variance is granted, the party who requested it must maintain a public liability insurance policy

1. Regulation 26 provides nearly identical wording regarding the installation of telecom-

munications facilities in buildings of five levels or more.

with a minimum coverage of one million dollars.

Sprint complied with the mandates of Section 3.04 when it submitted the following to ARPE: (1) the authorization form from the property owner; (2) an explanatory memorandum prepared by Engineer José Santiago–Veray from the independent engineering firm URS Caribe LLC; (3) a sworn statement executed by Sakol Ortiz, supervisor of Sprint's Radio–Frequency Engineering Department, explaining that four other sites were considered and rejected for specific reasons set forth in the statement; and (4) the required Telecommunications Regulatory Board endorsement. Further, the Hearing was held in compliance with Regulation 26 on October 24, 2006. The Court has found no requirement that Sprint must make a showing of "extraordinariness" or "meritoriousness" to obtain a variance. The Court holds that Sprint has met all other requirements for said variance.

It is worth noting that, apart from generally stating that Sprint failed to fulfill the alleged "extraordinary" or "meritorious" requirement, ARPE's Resolution and Order presents no evidence and sets forth no arguments in support of denying the variance because the building in question is only three, rather than the requisite five, stories. Rather, the Resolution and Order almost exclusively sets forth health concerns of the neighbors, which, as previously discussed, cannot be considered under the TCA.

In light of Sprint's compliance with Law 89 and Regulation 26 in its submission of an application for a variance, and because Law 89 and Regulation 26 make no mention of an "extraordinary" or "meritorious" requirement in obtaining a variance, the Court holds that Sprint has fulfilled the requirements for a variance.

## C. *THE PUERTO RICO UNIFORM ADMINISTRATIVE PROCEDURE ACT*

In Count IV of the Complaint, Sprint alleges that in denying the Preliminary Plan, Defendant ARPE was also in violation of the LPAU. The LPAU states that, in any formal adjudicatory procedure before an agency, the parties shall have "[t]he right to have the decision based on the record of the case." P.R. LAWS ANN. tit. 3, § 2151. The LPAU further requires that "[t]he agency's record shall constitute the exclusive grounds for action by the agency in an adjudicatory procedure under this chapter and for the subsequent judicial review." P.R. LAWS ANN. tit. 3, § 2168. Finally, the LPAU provides that "the findings of fact of the agency's decision shall be upheld by the court if they are grounded on substantial evidence filed in the administrative record." P.R. LAWS ANN. tit. 3, § 2175. The Supreme Court of Puerto Rico has defined "substantial evidence" as "such relevant evidence that a reasonable mind could accept as adequate to uphold a conclusion." *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953).

The Court grants summary judgment as to Count IV of the Complaint because, as set forth above, there exists no genuine issue of material fact to the effect that ARPE's decision to deny the Preliminary Plan is solely based on the alleged adverse health effects of radio frequency emissions. Said health considerations cannot be considered lawful substantial evidence under the TCA.

## VI. *APPROPRIATE RELIEF*

■ Having concluded that Defendant ARPE's Resolution and Order cannot be upheld on the grounds it stated, the Court must determine the appropriate remedy. Plaintiff Sprint requests injunctive and declaratory relief ordering Defendant to

grant the application and issue all necessary permits to allow the installation and operation of the Facility. Defendant ARPE argues that rather than granting injunctive relief, the Court should remand the issue to ARPE for further proceedings.

Although a remand serves the purpose of affording deference to local authorities "over decisions regarding the placement, construction, and modification of personal wireless service facilities," 47 U.S.C. Section 332(c)(7)(A), it would also undercut the express direction of Congress that such matters be promptly decided. *See also* 47 U.S.C. § 332(c)(7)(B)(v); *New Par,* 301 F.3d at 399. The First Circuit has interpreted Section 332 to indicate that Congress did not desire "multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another." *Nat'l Tower, LLC,* 297 F.3d at 21. Rather, when a board decision is in violation of the TCA, the proper remedy "will be an order . . . instructing the board to authorize construction." *Id.;* see also *Brehmer v. Planning Bd.,* 238 F.3d 117, 120–22 (1st Cir.2001) (discussing and approving decisions by the majority of district courts granting injunctive relief in TCA cases).[2]

Further, an opportunity has been provided to the Municipality of Isabela and its residents by way of a Hearing to offer evidence in opposition to Sprint's Preliminary Plan and variance application, but no substantial evidence was presented apart from that improperly based on health effects. *See Nat'l Tower, LLC,* 297 F.3d at 24 (stating that "a board will not ordinarily receive a second chance"). While occa-

sions may arise where a remand may be in order—"for example, an instance of good faith confusion by a board that has acted promptly"—that is not the case here. *Id.* Under the circumstances of this case, a remand would serve no useful purpose and would only be the occasion for further delay. *See Brehmer,* 238 F.3d at 121 ("Because all relevant evidence was adduced at the initial hearing . . . a remand to the Planning Board would serve no useful purpose."). Therefore, the Court will issue injunctive relief as set forth herein.

## VII. CONCLUSION

For the reasons stated herein, Plaintiff Sprint's Motion for Judgment (**No. 49**) is **GRANTED,** and a separate Judgment will be entered for Plaintiff. Defendant ARPE is **ORDERED** to issue a variance and other applicable permits to Plaintiff Sprint so that it may construct the Facility on the identified three-story building. Said variance and permits shall be issued **on or before March 14, 2008.** Pursuant to Section 3.04 of Regulation 26, Sprint, being the party who requested the variance, is **ORDERED** to maintain a public liability insurance policy with a minimum coverage of one million dollars.

**IT IS SO ORDERED.**

2. The Court notes that Defendant ARPE's argument that the Eleventh Amendment of the United States Constitution prohibits a federal court from issuing injunctive relief in the form of ordering ARPE to grant Sprint's ap- plication for a variance is without merit. In *National Tower,* the First Circuit affirmed a district court's decision ordering just that. *Nat'l Tower, LLC,* 297 F.3d at 24.